## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BB ENERGY USA LLC,<br>a Delaware limited liability company, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. CIV-22-756-SLP |
| KEYERA ENERGY INC.,<br>a Delaware corporation, | )<br>)<br>) | |
| Defendant. | )<br>) | |

## O R D E R

Before the Court is Plaintiff BB Energy USA LLC's Motion to Remand and Brief in Support [Doc. No. 17]. The Motion is at issue. *See* Def.'s Resp. [Doc. No. 25]; Pl.'s Reply [Doc. No. 28].[1] For the reasons that follow, Plaintiff's Motion is GRANTED and this matter is remanded to state court.

## I.      Introduction

Plaintiff initiated this breach of contract action in the District Court of Lincoln County, State of Oklahoma. Defendant removed the action to this Court based on diversity of citizenship jurisdiction. The remand dispute centers on where Defendant's principal place of business is located for purposes of establishing its citizenship and thus, whether removal is proper.

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

## II.   <u>Governing Standard</u>

Federal courts are courts of limited jurisdiction, and the party seeking to invoke federal jurisdiction bears the burden of proving such jurisdiction exists. *Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 770 F.3d 944, 946–47 (10th Cir. 2014).   A defendant may remove a civil action from state court to federal court when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a).   The removing party must establish by a preponderance of the evidence that the court's exercise of diversity jurisdiction is proper.  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014); *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1108 (D.N.M. 2017).

Original jurisdiction based on diversity exists where no plaintiff and no defendant are citizens of the same state and the amount in controversy exceeds $75,000 (exclusive of interest and costs). *See* 28 U.S.C. §§ 1332(a), 1441(b)(1); *Middleton*, 749 F.3d at 1200. A corporation is deemed a citizen of both its place of incorporation and its principal place of business.  28 U.S.C. § 1332(c)(1).

## III.   <u>Analysis</u>

Plaintiff is a foreign corporation.  Plaintiff alleges that Defendant is also a foreign corporation and its principal place of business is in Calgary, Canada.  *See* Pet. [Doc. No. 1-2], ¶ 2. Conversely, Defendant alleges its principal place of business is in Houston, Texas.  *See* Notice of Removal [Doc. No. 1], ¶ 7.  If Defendant's principal place of business in Calgary, Canada and not Houston, Texas, Defendant is also a foreign corporation and diversity is lacking under § 1332. *See Mgmt. Nominees, Inc. v. Alderney Invs., LLC*, 813 F.3d 1321, 1325 (10th Cir. 2016) (complete diversity does not exist

where there are "only foreign entities on both sides of the dispute").  Thus, the Court must determine the location of Defendant's principal place of business.

In *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010), the Supreme Court had to interpret the phrase "principal place of business" as used in 28 U.S.C. § 1332(c)(1).  In doing so, the Court "place[d] primary weight upon the need for judicial administration of a jurisdictional statute to remain as simple as possible."  *Id.* at 80.  The Court held that "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control and coordinate the corporation's activities."  *Id.*  Adopting the lower courts' "metaphorical reference to that place as the corporation's "nerve center" the Court stated that "the 'nerve center' will typically be found at the corporation's headquarters."  *Id.* at 81.  The Supreme Court adopted this rule over a different approach that some courts had followed which focused on "the total amount of business activities that the corporation conducts" in a state, because: (1) focusing on the total amount of business activities in a state "invites greater litigation and can lead to strange results"; and (2) "administrative simplicity is a major virtue in a jurisdictional statute."  *Id.* at 93–94.

Plaintiff points to numerous corporate filings which designate Defendant's address and/or principal place of business as located in Calgary, Canada.  Plaintiff also points to the location of Defendant's top officers.

Defendant primarily relies on the Declaration of Mark Wright [Doc. No. 25-1] to establish that its principal place of business is Houston, Texas.  Defendant also requests the Court to take judicial notice of additional briefing and supplemental evidence filed in a related, pending proceeding, *Keyera Energy, Inc. v. Petrolama Energy Canada Inc. and*

*BB Energy USA LLC*, Case No. CIV-22-2919 (S.D. Tex.) (Related Litigation). *See* Def.'s Request for Judicial Notice [Doc. No. 29].[2]  In particular, Defendant requests the Court to take judicial notice of the Declaration of Jamie Urquhart. *See* Related Litigation, Urquhart Decl. [Doc. No. 27-1].  Mr. Urquhart is a director and officer of Defendant, serving as its President.  The Court addresses points of contention arising from these Declarations more fully below.

First, however, the Court addresses certain facts that are not in dispute.  As set forth, Plaintiff is a foreign corporation.  And Defendant is a Delaware corporation. Defendant is a wholly-owned subsidiary of Keyera Corp., an Alberta, Canada, corporation.  Wright Decl., ¶ 2.[3]

Defendant's office is located in Houston, Texas, with two on-site offices in Oklahoma. *Id.*, ¶ 6.   Approximately nine employees work in that office. *Id.*, ¶ 7.  Mr. Wright oversees approximately 28 employees – 3 direct reports and 25 indirect reports. *Id.*, ¶ 8.[4]

Defendant has 4 directors who also serve as officers. *Id.*, ¶ 3.   Mr. Wright is the only director/officer located in Houston, Texas. *Id.*, ¶¶ 4, 8(b).  Mr. Wright serves as Defendant's Treasurer. *Id.*, ¶ 3.  Mr. Wright is also an employee and holds the title: General Manager—US Operations. *Id.*, ¶ 4.

---

[2] Plaintiff has raised no objection to the Court's consideration of the Urquhart Declaration.

[3] Mr. Urquhart is a senior vice president and the Chief Commercial Officer of Keyera Corp. Urquhart Decl., ¶ 2.

[4] Mr. Wright does not state how many total employees Defendant has or the location from which the 25 indirect reports to Mr. Wright work.

Mr. Dennis Granger is a director and holds the office of Secretary. *Id.*, ¶ 3.   Mr. Granger is employed as US Operations Manager.   *Id.*, ¶ 8(b).   Mr. Granger does not reside in Houston, but instead resides in Tyler, Texas.   *Id.*

The remaining two directors and officers are Mr. Jamie Urquhart, President and Mr. Darren Rousch, Vice President.   *Id.*, ¶ 3.   Notably absent from both Mr. Wright's Declaration and Mr. Urquhart's Declaration is any statement about where these two officers and directors reside.   However, both Mr. Urquhart and Mr. Rousch are also officers of Defendant's parent company and Plaintiff has submitted evidence that lists Mr. Urquhart's address as Calgary, Canada.  Pl.'s Reply at 4 and n. 5.

Thus, to the extent the residence of any director or officer is indicative of where Defendant's nerve center is located, Defendant has failed to meet its burden to show that Houston, Texas is Defendant's principal place of business. A corporation's principal place of business is "a single place" and "a place within a State," not the State itself. *Hertz Corp.*, 559 U.S. at 93.  Thus, the fact that Mr. Granger lives in Tyler, Texas does not support a finding that Houston is Defendant's principal place of business.

The Court now turns to additional matters addressed in the Declarations.  First, the Court addresses the statements in the Declarations concerning Mr. Wrights responsibilities.

Mr. Wright makes the following statement:

> As KEI's General Manager-US Operations, and as a director and officer, I believe I am the person who has overall responsibility for directing, controlling, and coordinating KEI's business activities.

Wright Decl., ¶ 12.

5

Mr. Urquhart makes a related statement:

Mark Wright is the person who has overall responsibility and authority for directing, controlling, and coordinating KEI's business activities.

Urquhart Decl., ¶ 7.

The Court finds these statements are not helpful to the ultimate determination. They merely parrot the rule set forth in *Hertz Corp.* and state, "in the affiant's opinion, the legal conclusion the court should reach." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1031 (10th Cir. 2022) (addressing deficiency of affidavits in summary judgment context); *see also Gerson v. Logan River Acad.*, 20 F.4th 1263, 1281 (10th Cir. 2021) (rejecting declaration because it drew a legal conclusion and was also conclusory where supporting factual allegations omitted facts essential for drawing the conclusion).

The Court examines the other facts set forth in Mr. Wright's Declaration. Mr. Wright states that he signs approximately 75 to 80% of Defendant's contracts, including "storage agreements like those at issue in this case." Wright Decl., ¶ 10. But Plaintiff argues that Mr. Wright's "contracting authority" is exaggerated. Mr. Wright alleges he has signature authority: (1) up to $5,000,000 USD for certain contracts, (2) up to $2,000,000 for other contracts, and (3) up to a customer's counter-party credit limit for other transactions. Wright Decl., ¶ 10. Plaintiff contends these are "diminutive amounts" when compared to the transactions at issue in this litigation. Reply at 6 and n. 13.[5] Mr. Wright's Declaration is notably silent as to who holds contracting authority where the contracts are in excess of these amounts. And Mr. Wright impliedly concedes that

---

[5] Mr. Wright is not the signatory on any of the contracts at issue. *See* Reply at 5 (detailing signatories to contracts).

approximately 25% of Defendant's contracts must be signed by someone other than Mr. Wright.  Plaintiff argues that those authorizations "must be either [Defendant's] higher-ranked officers or those of its parent company, all of whom reside in Calgary."  Under these circumstances, Mr. Wright's contracting authority is not significantly probative to establish that Defendant's nerve center is located in Houston Texas.

Mr. Wright also points to provisions in the contracts at issue in this dispute requiring that notice be sent to Defendant at the Houston office.  But the question before the Court is not informed by such contract-specific facts.  Instead, the Court must determine from where Defendant's overall operations are directed.  Thus, the Court finds the notice provisions of little relevance.  For this same reason, the fact that the Houston office address was used for "important correspondence" related to the disputes in this case is of little relevance.  *See, e.g., Lucas v. Verizon Commc'ns, Inc.*, No. 20-CV-5542 (AJN), 2021 WL 1226889, at *7 (S.D.N.Y. Mar. 31, 2021) ("A corporation's citizenship, for purposes of diversity jurisdiction, does not turn on the issues implicated in a particular case."); *Gentry v. Sikorsky Aircraft Corp.*, 383 F. Supp. 3d 442, 451 (E.D. Pa. 2019) ("[Plaintiff], in her Motion to Remand, misinterprets the *Hertz* test. . . . [A]s *Hertz* makes clear, the nerve center analysis is not case-specific: A corporation has one nerve center for all cases.").

Mr. Wright next addresses Plaintiff's evidence of numerous corporate filings in which Defendant has identified its home office as located in Calgary, Alberta, Canada. *See, e.g.*, State of Delaware Annual Franchise Report [Doc. No. 17-6]; Oklahoma Secretary of State Filings [Doc. No. 17-7].  Mr. Wright states that Defendant entered into

a Management Services Agreement (MSA) with Keyera Partnership "to outsource many of [Defendant's] administrative and support functions." *Id.*, ¶ 16.[6]  According to Mr. Wright, Defendant's use of any Calgary mailing or office address on Defendant's "corporate filings or returns" is due to the outsourcing of certain functions to Keyera Partnership. *Id.*  Defendant argues, therefore, that the use of a Calgary mailing address is not dispositive.

In reply, Plaintiff has submitted the MSA. *See* Doc. No. 25-4.  Plaintiff argues the MSA "demonstrates that Calgary is the center of much more than mere 'support functions.'"  Reply at 7.  Indeed, the MSA provides that a multitude of "managerial, administrative and support services" are to be provided by Keyera Partnership to include: "strategic planning and long-term planning"; "budget planning"; "evaluating acquisition and other corporate development opportunities"; "corporate finance"; "cash management"; "investment and distribution of [Defendant's] funds"; "providing and coordinating legal services"; "supervision of [Defendant's] legal affairs"; "managing community and public relations affairs"; and "representation of [Defendant] in regulatory and other governmental proceedings". *See* MSA at 1-2 (Services).

Although the corporate filings Plaintiff points to as identifying Calgary as Defendant's principal place of business, are, standing alone, insufficient to establish Defendant's principal place of business, *see Hertz Corp.*, 559 U.S. at 97, they are

---

[6] Keyera Partnership "is an Albertan general partnership with offices in Calgary, Alberta Canada." *Id.*

persuasive evidence considering the additional facts of this case.[7]  Moreover, a review of the MSA indicates significant management functions, not limited to support services, are carried out in Calgary.  These facts, therefore, cut against Mr. Wright's statements.

The Court further considers the statements contained in Mr. Wright's and Mr. Urquhart's Declarations regarding delegation of authority to Mr. Wright.  First, Mr. Wright states the following:

> •      KEI's board of directors, which includes myself and Mr. Granger, has largely delegated overall responsibility for KEI's operations to me as KEI's General Manager—US Operations.

> •      Since he assumed the role as KEI's General Manager—US Operations, the board of directors for the company has never met.[8]

> •      Ultimate responsibility for executing the day-to-day functions, growth-and-development planning, operational oversight and decision-making, and contract negotiation and execution rests with Mr. Wright as KEI's General Manager—US Operations.[9]

> •      Mr. Wright and his Houston-based KEI reports are responsible for: Profit and Loss (P&L) for KEI and the associated budget processes; identifying prospective business opportunities, new ventures, and business development; negotiating and executing contracts on behalf of KEI; and coordinating and directing the logistical and operational functions of KEI's core business, including at the KEI-operated terminals in Oklahoma and the one it services in Texas.[10]

---

[7] In *Hertz Corp.*, the Supreme Court cautioned that "the mere filing of a form . . . listing a corporation's 'principal executive officers' would, *without more*, be [in]sufficient proof to establish a corporation's 'nerve center.'"  *Id.* at 97 (emphasis added).

[8] It is unclear how the board of directors has delegated responsibility for KEI's operations to Mr. Wright in his capacity as KEI's General Manager—US Operations, if the board has never met since Mr. Wright assumed this role.

[9] But as previously set forth, limitations exist on Mr. Wright's contracting authority.

[10] Although Mr. Wright purports to have sole responsibility for these matters, many of them appear to overlap with services provided under the terms of the MSA.

> • Mr. Wright and his direct reports provide direction for other corporately supplied Keyera services (both KEI and Keyera Corp.), whether staffed in Houston, Oklahoma or Alberta including Engineering, Safety, Accounting, Regulatory, Information Technology, Human Resources, and the like.

Wright Decl., ¶ 9.

Mr. Urquhart similarly states that "KEI has delegated primary decision-making authority for KEI, and all of KEI's US operations, to its General Manager—US Operations." Urquhart Decl., ¶ 6. But in seeming contradiction to this statement, Mr. Urquhart includes this qualification:

> That is, while the board of directors and officers may receive reports and information to monitor KEI, and while the directors and officers may set broad direction, goals, or targets for KEI or discuss the business objectives of KEI, the directors and officers do not themselves direct, control, or coordinate KEI's business activities. That responsibility and authority is executed by KEI's General Manager – US Operations, who is Mr. Mark Wright.

*Id.*, ¶ 6.

Defendant essentially asks the Court to find that it has a board of directors of one – Mr. Wright. And yet, Mr. Urquhart acknowledges that the board of directors and officers *oversee* Mr. Wright's conduct by "receiving reports" to "*monitor*" KEI and to "*set broad direction, goals or targets*." To this end, the purported "delegation of authority" is, itself, evidence of the level of control maintained by the board of directors. In the Court's view, Mr. Urquhart's Declaration is more probative of showing that the board of directors (and not Mr. Wright – individually), direct high-level decisions and, consequently, that under *Hertz Corp.*, Defendant's nerve center is where those board of directors are located.

Furthermore, Mr. Wright's role and attendant responsibilities as General Manager—US Operations are not sufficient to establish that Defendant's nerve center is Houston, Texas.  It is officer control that is decisive, even if the result may be anomalous in cases such as this where officer control and daily function occur in different places. *See Hertz Corp.*, 559 U.S. at 96 ("[I]f the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the "principal place of business" is New York."); *see also Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 106, 107 (4th Cir. 2011) (after *Hertz Corp.*, "day-to-day operations and public interface" is not relevant; instead the "touchstone for now determining a corporation's principal place of business for diversity purposes is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities'" (quoting *Hertz Corp.*, 559 U.S. at 80)).

In sum, this is not a clear-cut case. But the Court finds certain matters omitted from the Declarations to be significant.  For example, Mr. Wright's Declaration expressly identifies his residence and Mr. Granger's residence, but is unexplainedly silent with respect to the residences of Mr. Urquhart and Mr. Rousch.  Mr. Wright's Declaration is also silent with respect to who holds contracting authority where amounts exceed those for which Mr. Wright holds such authority, such as the contracts at issue in this litigation. Moreover, Mr. Wright's Declaration is not entirely consistent with other evidence of record.  As the Court has noted, Mr. Wright purports to have sole responsibility of matters covered by the MSA.  Additionally, Mr. Urquhart's Declaration equivocates with

11

respect to the level of Mr. Wright's direction and control. As to the delegation of duties to Mr. Wright, that delegation is alleged to have occurred without any board action. Finally, the officers and directors reside in different locations, but a narrow plurality reside in Calgary. And, the officers that reside there are Defendant's two top officers. Moreover, as set forth, Defendant has identified Calgary, Canada as its principal place of business in numerous corporate filings.

Defendant bears the burden of establishing diversity jurisdiction. Here, Defendant fails to show by a preponderance of the evidence that its principal place of business is Houston, Texas. Instead, the record before the Court more strongly suggests that Calgary, Canada is Defendant's nerve center as it appears to be the place of ultimate control by Defendant's top decision makers,. *See Hertz Corp.*, 559 U.S. at 95–96 (explaining that some corporations "divide their command" among different locations but that the nerve center test "points courts in a single direction, towards the center of *overall* direction, control, and coordination" (emphasis added)). Accordingly, this dispute is between two foreign states and the requisite diversity of citizenship for this Court's exercise of subject matter jurisdiction is lacking.[11]

---

[11] Plaintiff also argues that Defendant's parent corporation, Keyera Corp. has "blur[red] the line between the two entities, as evidenced by Keyera Corp.'s publications and website." According to Plaintiff, information contained in these publications and on the website "indicates that "Keyera Corp. serves as the controlling entity for [Defendant's] operations." Plaintiff, therefore, argues the fact that Keyera Corp.'s principal place of business in Calgary, Canada, Defendant's principal place of business is necessarily located there, too. Reply at 9-11. However, "a subsidiary corporation has its own principal place of business for diversity jurisdiction, unless it is merely an 'alter ego' or agent of the parent." *Khan v. Bank of New York Mellon*, 525 F. App'x 778, 780–81 (10th Cir. 2013). Because, the Court finds Defendant has failed to establish Houston, Texas as its principal place of business, the Court deems it unnecessary to further consider this argument/evidence.

IV.   **Attorneys' Fees**

Plaintiff also moves for an award of costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c).  The Court declines to grant Plaintiff's request.  The record shows a reasonable dispute between the parties as to the location of Defendant's principal place of business.  *See Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1253 (10th Cir. 2010) ("[T]he standard for awarding fees should turn on the reasonableness of the removal." (citation and internal quotation marks omitted)).

V.   **Conclusion**

IT IS THEREFORE ORDERED that Plaintiff BB Energy USA LLC's Motion to Remand and Brief in Support [Doc. No. 17] is GRANTED but Plaintiff's request for attorneys' fees is DENIED. The Clerk of Court is directed to take all actions necessary to effect the remand.[12]

IT IS SO ORDERED this 5th day of June, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[12] Based on the remand, the Court does not address Defendant's pending Motion to Dismiss [Doc. No. 8], but leaves that matter for resolution by the state court.